## JOSEPH POWELL ET AL. v. J. I. BLAIR ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 14, 1890—Decided March 24, 1890.

(a) A corporation executed and delivered a mortgage, the money raised thereon being admittedly applied to discharge a purchase-money indebtedness on the mortgaged property, the mortgagee receiving, moreover, certain shares of stock of the company with the note of its officers, as additional security for the loan.

1. As the mortgage did not increase the indebtedness of the corporation, it was not invalid because violative of § 7, article XVI. of the constitution, prohibiting such increase without the consent of the shareholders; and, in the absence of fraud, the mortgagee had a right to all the security the company or its officers were willing to give him.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 237 January Term 1890, Sup. Ct.; court below, No. 2 October Term 1888, C. P.

On September 10, 1888, Joseph Powell and E. N. Frisbie, as shareholders of the Bangor Union Slate Company, filed a bill in equity against John I. Blair, Simeon B. Chase, Geo. W. Mackey, J. E. Long and the Bangor Union Slate Company, averring, with a specific statement of the facts, that a certain mortgage held by John I. Blair against the property of the Bangor Union Slate Company, for $37,000, had been executed and delivered for a personal loan to Messrs. Chase, Mackey and Long, who were then the officers of the company, and as

such had executed and delivered the mortgage without the consent or authority either of the directors or the stockholders thereof; praying that the mortgage be declared fraudulent and void; that said John I. Blair be ordered and decreed to deliver up the same to be canceled and to make restitution to the company of all money paid to him on account thereof, and for further relief.

Answers having been filed and issue joined, the cause was referred to *Mr. H. S. Cavanaugh*, as examiner and master, who, finding the facts sufficiently appearing in the opinion of the court below, and considering section 7, article XVI. of the constitution; sections 18, 19, act of April 29, 1874, P. L. 81; act of April 18, 1874, P. L. 61; Pittsb. etc. R. Co. v. Rothschild, 4 Cent. R. 107; Lewis v. Jeffries, 86 Pa. 340; Green's Brice's Ultra Vires, 724; Waterman on Specif. Perf., § 226; Morawetz on Corp., 123–4, 171–6; Watts's App., 78 Pa. 370; Ahl v. Rhoads, 84 Pa. 319; recommended a decree dismissing the plaintiff's bill at their costs.

To the master's report the plaintiffs filed exceptions, and after argument thereof, the court, SCHUYLER, P. J., filed the following opinion:

On September 29, 1880, the Bangor Union Slate Company, one of the defendants here, executed and delivered to John I. Blair, one of its co-defendants, a mortgage for $37,000, being the amount of the balance of the purchase money then due to other parties from the company for the real estate covered by the mortgage, which balance was being pressed for payment. In exchange for the mortgage Mr. Blair advanced the full sum of $37,500 in cash, and with this money the company canceled its purchase money indebtedness. Of the $37,500, the sum of $17,500 has been repaid to Mr. Blair, and for all present purposes the mortgage is to be treated as if it had been given originally for $20,000. It is not claimed that any part of this $20,000 has been paid, but we are asked to make a decree that the mortgage be delivered up for cancellation, on the contention that it was procured by fraud practiced by Mr. Blair, in conjunction with Messrs. Chase, Mackey and Long, who are also made co-defendants and were respectively the president, secretary and treasurer of the company.

Opinion of Court below.

It seems that at the time the mortgage was given Messrs. Chase, Mackey and Long in their individual capacities gave to Mr. Blair their joint note for the same $20,000 represented by the mortgage.  It also appears that, at the time, they issued to themselves 200 shares of the capital stock of the company, said shares being of the par value of $100 each, and assigned the same to Mr. Blair as collateral security for the payment of the note.  Divested of hard words, the allegation in the bill is, substantially, that the $20,000 was loaned, not to the company, but to Messrs. Chase, Mackey and Long, to enable them to pay for the shares of stock just mentioned; that these gentlemen turned the money over to the company in payment for the stock, and that the mortgage was given by them as the officers of the company, without lawful authority, as collateral security for the payment of their private debt.  This is important, if true; but is it true?

The only witnesses examined as to the transaction were the four gentlemen above mentioned, who all testified positively that the money was loaned to the company, and that the note was given merely as collateral security.  Against this, Mr. Frisbie, one of the plaintiffs, testifies that Messrs. Chase, Mackey and Long all told him that they " had subscribed for $20,000 of the stock, and had borrowed the money to pay for it from Mr. Blair."  Admitting, for the sake of the argument, that there is no possibility of mistake on Mr. Frisbie's part, and laying aside his interest, the utmost effect of his testimony would be to cast discredit upon the testimony of the three gentlemen named, which would still leave the mortgage, and the undisputed fact that the company received and appropriated to its own use the whole of the $20,000, to speak for themselves.  The same is true of the attempt to show that Mr. Mackey's testimony does not correspond with his testimony on another occasion.

There is little else in the plaintiff's evidence calling even for passing notice.  The plaintiffs have no right to complain that Mr. Blair did not record his mortgage for several years, and that he desired to keep its existence a secret, as all the evidence shows that that was done to favor the company, to enable it to dispose of its stock.  That Mr. Blair endeavored to collect the note from the makers, without first foreclosing the mortgage,

throws no light upon the question as to whether the loan was to the makers of the note or to the company, for in either event he would have had a right to do as he did. Nor can we see how it is of the slightest importance that the dividends on the 200 shares of stock were paid to Messrs. Chase, Mackey and Long. Upon the foregoing state of the proofs, the master was asked to find directly that the $20,000 loan was made to Messrs. Chase, Mackey and Long, and indirectly that these three gentlemen with Mr. Blair had conspired together to defraud the Bangor Union Slate Co. The learned master did well in refusing to respond to a request so unreasonable.

But one question remains. It is claimed by the learned counsel for the plaintiffs that the mortgage is void because given in violation of article XVI. section 7, of the constitution, which provides that " the stock and indebtedness of corporations shall not be increased . . . . . without the consent of the persons holding the larger amount in value of the stock, first obtained at a meeting to be held after sixty days notice." If this be true, it may be that the plaintiffs would be entitled to relief under the present bill, on the theory that the mortgage is a cloud upon title, but we do not feel called upon to decide that question, as we are clearly of the opinion that the clause in the constitution above referred to has no application. True, here there was no previous meeting of the stockholders, but was the indebtedness of the corporation increased by the transaction under consideration ? The learned master thought not and we agree with him.

In Ahl v. Rhoads, 84 Pa. 319, it is held that where a bank, without the consent of its stockholders, executes a mortgage upon its property to secure the debt of a creditor, the execution of such a mortgage is not an increase of indebtedness within the meaning of the constitution, which prohibits any increase of indebtedness by a corporation without the consent of a majority of its stockholders given at a meeting called for that purpose. The ground of that decision is, that the mortgage was given as " security for an indebtedness that had already legitimately accrued," and that therefore " there was nothing in the transaction that could properly be described as the creation or increase of a debt." We cannot see wherein Ahl v. Rhoads differs in principle from the case in hand. True, in the

Opinion of the Court.

former case the mortgage was given immediately to the creditor, but the effect in both cases was the same, the securing of an existing debt. It is a great mistake to say that Ahl v. Rhoads turns solely on the fact that the bank in that case had been chartered prior to the new constitution. I have examined carefully the authorities cited for the plaintiffs, but find nothing calling for comment. My labors have been much lightened by the very intelligent report of the learned master, who has discharged his duties with great satisfaction to the court. The costs were properly placed on the plaintiffs.

1889, December 30. Exceptions overruled and bill dismissed.
—Thereupon the plaintiffs took this appeal specifying the overruling of their several exceptions and the· dismissal of their bill for error.

*Mr. Aaron Goldsmith*, for the appellants.

Counsel cited: Section 7, article XVI. of the constitution; sections 18, 19, act of April 29, 1874, P. L. 81; Pittsb. etc. R. Co. v. Rothschild, 4 Cent. R. 107; s. c. 1 Pa. C. C. R. 620; Maas v. Railroad Co., 1 Mona. 497; Lewis v. Jeffries, 86 Pa. 340; Kersey Oil Co. v. Railroad Co., 12 Phila. 374; Fowler v. Scully, 72 Pa. 456; Burkholder v. Beetem, 65 Pa. 496; Venango N. Bank v. Taylor, 56 Pa. 14; Millerstown v. Frederick, 114 Pa. 440; Rainsburg Bor. v. Fyan, 127 Pa. 74; Simons v. Vulcan Oil & Min. Co., 61 Pa. 202.

*Mr. Simeon B. Chase* and *Mr. Geo. W. Mackey*, for the appellees, were not heard.

PER CURIAM:

There is nothing in this case to overturn the findings of fact by the master, approved as they are by the court below. The mortgage in question was given to Mr. Blair by the Bangor Union Slate Company for borrowed money. This money was admittedly applied by the company to the payment of the purchase money of its real estate. That Mr. Blair also received certain shares of the stock of the company, with the notes of the officers, as collateral or additional security, is not to the purpose. When Mr. Blair parted with his $37,000, he had a right to all the security the company or its officers were willing

to give him. If any of the shares of stock were irregularly issued, it comes with an exceeding ill grace for the company or any of its members to seek to invalidate them in his hands. If they want to raise such a question, let them first pay Mr. Blair his money. They will then be in a better position to engage in such an inquiry. The argument that the mortgage is void because transgressive of article XVI., § 7 of the constitution, will not bear examination. The mortgage did not increase the indebtedness of the corporation; it merely changed its form. We find nothing in the case to sustain or to justify the charges of conspiracy and fraud so freely made in the bill.

The decree is affirmed, and the appeal dismissed, at the costs of the appellants.