## Miller *v.* Hellam Distilling Company (No. 1).

*Corporations—Issue of bonds—Pledge of bonds—Conflict between different classes of bondholders—Bonds issued below par—Constitution of Pennsylvania, art. 16, sec. 7.*

1. Under art. 16, sec. 7 of the constitution of Pennsylvania which provides that "no corporation shall issue stock or bonds except for labor done or money or property actually received, and all fictitious increase stock or indebtedness shall be void," and under the similar

provision in sec. 17 of the General Corporation Act of April 29, 1874, P. L. 73, corporations may pledge their bonds for less than their face value, provided the corporate officers act in good faith and secure the best price obtainable for such bonds; and persons holding the bonds as pledge or collateral security have the right to participate in the distribution of money arising from the sale of the property covered by the mortgage which secured the bonds, on the face of the bonds plus the interest, to the amount of the money borrowed or debt incurred plus the interest; and this is the case although other portions of the same issue of bonds have been sold for cash at par.

2. Bonds pledged by a corporation to secure a debt are "bonds issued."

Argued March 11, 1914.    Appeal, No. 6, March T., 1914, by E. T. Eyster, from decree of C. P. York Co., Jan. T., 1908, No. 2, dismissing exceptions to report of auditor in case of Wolf Miller et al. v. Hellam Distilling Company.    Before RICE, P. J., HENDERSON, ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Affirmed.

Exceptions to report of Donald H. Yost, Esq., auditor. The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*Frank M. Bortner*, with him *Spencer D. Wareheim*, for appellant.—It was error for the auditor to permit the pledgees of these bonds to share pro rata on the face of the bonds with the purchasers of bonds for cash, in the proceeds of the sale of the real estate covered by the corporation mortgage: Rice's App., 79 Pa. 168.

*H. C. Niles*, with him *M. S. Niles, C. A. May* and *Geo. E. Neff*, for the First National Bank of York, Pa., appellee.

*W. F. Bay Stewart*, with him *W. A. Miller* and *Frederick B. Gerber*, for Henry Weigle and Charles H. Stark, appellees.

OPINION BY KEPHART, J., May 4, 1914:

This is an appeal from the order of the court below dismissing appellant's exceptions to the report of the auditor, who was appointed to distribute the funds in the hands of the receiver arising from the sale of the property of the Hellam Distilling Company. By proper corporate action this company authorized the execution of a mortgage securing an issue of bonds to the amount of $50,000. Of this issue, bonds were sold for cash to the amount of $14,500, and some time after the sale of these bonds for cash but prior to the appointment of the receiver, bonds of the par value of $18,000 of this same issue, secured by the same mortgage, were pledged by the company as collateral security for a debt owed and money borrowed by the company and were issued on the basis of from fifty to sixty per cent of their par value. This collateral was held by certain individuals and the First National Bank of York. The fund realized by the receiver was not sufficient to pay all of the outstanding bonds sold for cash and the full amount of the money borrowed, with interest, and for which the bonds were pledged as collateral. The appellant contends that the bonds sold for cash should have a preference in the distribution over the bonds pledged as collateral and assigns as a reason that the pledging of these bonds as collateral was in violation of art. 16, sec. 7, of the constitution of this state, which provides as follows: "No corporation shall issue stock or bonds except for labor done or money or property actually received and all fictitious increase of stock or indebtedness shall be void." He further contends that if the holders of the collateral security are entitled to participate in the distribution they should be limited in their pro rata distribution to the face of their notes, with interest, and not on the face of the bonds, with interest, which they held as collateral.

The auditor's finding of fact, which was not excepted to in the court below nor assigned as error in

this court, aids materially in determining this question. His finding is as follows: "That in every instance the company actually received the money, and that the pledging of the bonds as collateral for the company's various promissory notes was duly authorized by resolution of the board of directors as appears from the minutes of the meetings of the company and the testimony taken by the auditor." The questions here raised have never been passed upon by the courts of our state and in considering them, the question of a sale of bonds, under this article, of necessity enters into the discussion. The constitutional provision was intended to prevent the jeopardizing of corporate property by an incumbrance placed upon it where no return, either in money or property, had been received by the corporation; to stop frauds upon stockholders, which would result through the postponement of their equities in favor of those of the bondholders and in diminishing or destroying the return due to the stockholders; and, as a bond is generally negotiable, to prevent a fraud upon an innocent purchaser who would take them believing a real consideration passed for their issue; and generally such issue without value would be against public policy. The primary object of this provision was to secure a fair consideration to the company before the bonds passed from its control. Where a corporation requires money to prosecute or extend its business and an effort is made to finance its requirements by a sale or pledge of bonds, it is not the intention of this constitutional provision that the corporate life should be throttled or severely impaired by holding the corporate officers to the duty of securing full value for the sale or pledge of the bonds. To so hold would not only cause serious financial difficulties to the corporation but would be contrary to a settled business policy which has been recognized by the profession as being in accordance with the law and in no wise violating constitutional restrictions. The officers of the cor-

poration are charged with the duty of securing the best price for their bonds as the circumstances under which they labor will admit of. This question as to price (and dealing solely with the question of an issue for money) must be determined as of the time when the bonds are issued. Into this question will enter the urgency of the need for money, the condition of the money market as it affects the particular corporation, the credit and confidence of the corporation desiring to sell the bonds, and numerous other details. A corporation which has just been launched into active life will not be able to sell its bonds at as good a price as it could later on when it had secured the confidence of the public.

In Peoria & Springfield Railroad Co. v. Thompson, 103 Ill. 187, the supreme court of Illinois, in discussing a provision of the constitution of that state similar to our own, say: "The object was, doubtless, to prevent reckless and unscrupulous speculators, under the guise or pretense of building a railroad or of accomplishing some other legitimate corporate purpose, from fraudulently issuing and putting upon the market bonds or stocks that do not and are not intended to represent money or property of any kind, either in possession or expectancy, the stock or bond in such case being entirely fictitious."

In Memphis, etc., Railroad v. Dow, 120 U. S. 287, Justice HARLAN quotes this language with approval and states: "The prohibition against the issuing of stock or bonds, except for money or property actually received or labor done, and against the fictitious increase of stock or indebtedness, was intended to protect stockholders against spoliation, and to guard the public against securities that were absolutely worthless. One of the mischiefs sought to be remedied is the flooding of the market with stock and bonds that do not represent anything whatever of substantial value."

This latter opinion construed the provision of the constitution of Arkansas, which is similar to that of our

own state, and in holding that bonds could be sold for less than par, states: "Recurring to the language employed in the Arkansas constitution, we are of the opinion that it does not necessarily indicate a purpose to make the validity of every issue of stock or bonds by a private corporation depend upon the inquiry whether the money, property, or labor actually received therefor was of equal value in the market with the stock or bonds so issued. It is not clear, from the words used, that the framers of that instrument intended to restrict private corporations . . . . in the exchange of their stock or bonds for money, property, or labor, upon such terms as they deem proper."

In Nelson v. Hubbard, 11 So. Repr. 428, the supreme court held: "Such bonds are not issued in contravention of the provision contained in the first sentence of the above-mentioned section of the Constitution, if the issue does not effect a 'fictitious increase of indebtedness,' and if they can properly be regarded as issue 'for money, labor done, or money or property actually received.' The constitutional provision in question operates to invalidate evidences of indebtedness when there is in fact no debt; to require every issue of stock or bonds of private corporations to represent substantial values received by the corporations; to impose upon these charged with the disposition of the corporate securities the duty to procure therefor a fair and reasonable equivalent in money, labor or property actually contributed to the corporation. Courts of the highest authority, which have considered the effect of such provisions, have not construed them, when not fortified by more stringent statutory requirements, as invalidating issues of stocks and bonds in exchange for money, property or labor, upon such terms as the corporate authorities, in the fair exercise of their judgment and discretion, may deem proper, though the amount received therefor was less than the face value of the securities. The negotiation of bonds must be a real transaction carried through to promote legitimate cor-

porate purposes, and not a mere trick or device to evade the law, and impose greater obligations upon the corporation than there is any occasion for it to assume in order to obtain the consideration received therefor. Issues of stocks and bonds have been sustained under constitutional or statutory provisions of the same import as the one under consideration, when they were disposed of for the best price that could be obtained, though for considerably less than their face value:" Memphis, etc., R. R. v. Dow, 120 U. S. 287; Peoria & S. R. R. Co. v. Thompson, 103 Ill. 187; Stein v. Howard, 65 Cal. 616; Handley v. Stutz, 139 U. S. 417; Clark v. Bever, 139 U. S. 96; Fogg v. Blair, 139 U. S. 118.

Prior to the constitution of 1874, it was held, in Gloninger v. Pittsburg, etc., R. R. Co., 139 Pa. 13, that a corporation had the power to sell bonds for less than their face value.

Under sec. 7, of art. 16, of the constitution, a corporation may sell its bonds for less than their face value for the best price that can be obtained for them, provided always, the transaction is a real one, based upon a consideration and having reference to legitimate corporate purposes and is not a mere device to evade the law and accomplish that which is forbidden: Memphis, etc., R. R. v. Dow, 120 U. S. 287. Having the power to issue bonds for less than their face value, may they be pledged as collateral for money borrowed? The auditor found that the money from the notes passed to the company. The bonds were pledged as collateral pursuant to a resolution of the board of directors. There was no evidence of any trick, artifice, fraud or abuse of discretion on the part of the directors. The price at which the bonds were placed as collateral is not of itself sufficient to convict the directors of bad faith. The consideration which inured to the company for the delivery of the bonds in pledge was the money it received on its notes. It is fairly to be assumed that without the collateral the loan would not have been granted.

How shall the bonds be "issued," "put into circulation," "put beyond its control" by the corporation? There is nothing in the constitutional provision declaring in what manner corporations shall dispose of their bonds after a fair consideration has been received. The word "issued" is broad enough to include pledge, sale, or a conditional sale. "In contemplation of law, bonds pledged by a corporation are just as much issued as when they are sold:" Atlantic Trust Co. v. Woodbridge, etc., Co., 79 Fed. Repr. 842; Firth Co. v. South Carolina Loan and Trust Co., 122 Fed. Repr. 569.

The supreme court of California, in Illinois Trust and Savings Bank v. Pacific Railway Co., 117 Cal. 332, in considering the question of pledge upon the clause in their constitution reading similar to the one in this state, has this to say: "The Constitution of this state (Article 13, Section 11) contains a similar provision. . . . Upon these provisions appellant contends that it had no power to pledge its own bonds as collateral security. When the bonds were so pledged and money or other property was actually received in consequence of such use of them, it seems to us that in a just and natural sense the bonds were issued "for" such money or property. They served the purpose designed by the company, procured value for it. The cases upon the subject uphold the right to pledge as included in the right to sell:" Farmers' Loan and Trust Co. v. Toledo & S. H. R. Co., 54 Fed. Repr. 759; Leo v. Railway Co., 17 Fed. Repr. 273; Duncomb v. Railroad Co., 84 N. Y. 190; Nelson v. Hubbard, 11 So. Repr. 428; Goldville Mfg. Co., in re, 118 Fed. Repr. 892; Thompson on Corporations (2d ed.), sec. 2300; Cook on Corporations, vol. 3, sec. 763, page 2579; In re Waterloo, etc., Co., 134 Fed. Repr. 345.

From the authorities quoted we hold that under art. 16, sec. 7, of the constitution, and sec. 17 of the Corporation Act of 1874, corporations may pledge their bonds for less than their face value, provided the corporate officers act in good faith and secure the best price obtain-

able for these bonds; second, the persons holding the bonds as pledge or collateral security have the right to participate in the distribution of the money arising from the sale of the property, covered by the mortgage which secured the bonds, on the face of the bonds plus the interest to the amount of the money borrowed or debt incurred, plus the interest; third, that the corporation has the power to pledge its bonds for less than their face value for debts or money borrowed.

In the appellant's printed argument he objects to a number of the notes, charging bad faith on the part of the directors. There was no exception taken to the findings of the auditor covering these questions and no assignment of error raising this point. A careful review of the testimony discloses no evidence of any bad faith on the part of the directors. The assignments of error are overruled and the order of the court below confirming the report of the auditor is affirmed at the cost of appellant.