**RAHWAY NAT. BANK v. THOMPSON. NATIONAL BANK OF POTTSTOWN, PA., v. SAME. SECURITY TRUST CO. OF POTTSTOWN, PA., v. SAME.**

(Circuit Court of Appeals, Third Circuit. July 28, 1925. Rehearing Denied September 17, 1925.)

Nos. 3292, 3294, 3295.

**1. Bankruptcy ⊜288(1)—Bankruptcy court held to have jurisdiction of petition for cancellation of bonds issued by bankrupt.**

Under Bankruptcy Act, § 2, subd. 7 (Comp. St. § 9586), where mortgaged property was sold free of liens and incumbrances, and balance remained in hands of trustee for distribution, bankruptcy court had jurisdiction of petitions to enjoin transfer of bonds alleged to have been issued without consideration, and to require their surrender to trustee for cancellation.

**2. Corporations ⊜448(1)—Promises made by owner of business prior to incorporating, and assumed by corporation, are valid and binding.**

Where owner of business prior to incorporating promised to deposit with bank bonds of corporation as collateral security for money lent, and such promise was assumed and fulfilled by corporation, it was valid and binding.

**3. Corporations ⊜471—If borrowing corporation promises, before loan is made, to subsequently issue and deliver bonds, bonds subsequently issued are issued for present consideration.**

Where borrowing corporation promises lender, before loan is made, subsequently to issue and deliver bonds as collateral security for loan, and later does so, subsequent issuance and delivery of bonds relates back to time of promise, and such bonds are issued for present consideration for money actually received and not for antecedent debt contrary to Const. Pa. art. 16, § 7.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Proceedings by Charles S. Thompson, trustee in bankruptcy of the Nagle Steel Company, against the Rahway National Bank, the National Bank of Pottstown, Pa., and the Security Trust Company of Pottstown, Pa. From decrees approving and confirming an order by the referee in bankruptcy, defendants appeal and petition to revise. Reversed, with directions.

E. Waring Wilson, of Philadelphia, Pa., Jesse R. Evans, of Pottstown, Pa., and Henry M. Brownback and Henry Freedley, both of Norristown, Pa., for appellants Security Trust Co. and another.

W. Curtis Bok, of Philadelphia, Pa., for appellant Rahway Nat. Bank.

J. B. Colahan, 3d, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. Nagle Steel Company, Inc., a Pennsylvania corporation, was adjudicated a bankrupt. Thereafter the trustee in bankruptcy filed with the referee his several petitions, alleging, in substance, that certain corporate bonds of the bankrupt, then severally held by Security Trust Company of Pottstown, Pa., National Bank of Pottstown, Pa., and Rahway National Bank, of Rahway, N. J., had been issued and delivered to those banks by the bankrupt without legal consideration. The petitions prayed that the banks be enjoined from transferring the bonds, and, further, that they be required to surrender the bonds to the trustee for cancellation. The Pottstown banks by answer denied the jurisdiction of the court to determine the question of their title to the bonds, demanded a trial by jury, and also, as did the Rahway Bank, set up the validity of the title of the respective banks to the bonds. An interlocutory injunction, as prayed for, was issued, and, after hearings had, the referee by order directed the banks to surrender to the trustee for cancellation the bonds held by them respectively. That order was approved and confirmed by the district court.

The matters are now before us upon appeal and petition to revise filed by each of the three banks. The questions presented by the assignments of error are whether the bankruptcy court had jurisdiction to determine the issues, and, if so, whether the Nagle Steel Company, Inc., received a legal consideration for the bonds in suit.

[1] We think the bankruptcy court had

jurisdiction. The bonds in question were a part of an authorized issue of 500 bonds, of $1,000 each, secured by a duly recorded general mortgage of the bankrupt upon its property. By order of the referee the mortgaged property was sold by the trustee free of liens and incumbrances. After the payment of taxes and underlying liens, a balance of $123,821.76 remained in the hands of the trustee for distribution among the persons entitled thereto. Apparently the bondholders under the general mortgage were entitled to share ratably in the distribution of that sum. But the trustee was in possession of information tending, as he conceived, to show that the bonds held by the banks had been issued to them without legal consideration, and that, consequently, such bonds should not participate in the distribution of the fund.

Upon the trustee rested the duty of conserving the fund in his hands for the benefit of those legally entitled thereto. If the bonds in the hands of the banks were in truth issued to them without legal consideration, proper performance of that duty required that the trustee see to it that their status with respect to the funds in the hands of the trustee should not be improved by a transfer to bona fide holders for value. In the performance of that duty and for the protection of the assets of the bankrupt estate then in his actual possession these proceedings were instituted. Only property in the possession of the trustee was affected thereby for the bankrupt estate was indeed insolvent and the bonds were valueless save as they entitled their holders to share in the fund in custodia legis. It follows, we think, Taubel-Scott-Kitzmiller Co. v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770; Galbraith v. Vallely, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823; Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Re Yorkville Coal Co., 211 F. 619, 128 C. C. A. 570 (C. C. A. 2); Re Teschmacher (D. C.) 127 F. 728, and like cases, relied upon by the banks, but having to do with property not in the possession of the bankruptcy court, are not here pertinent; that the question of jurisdiction is controlled by section 2, subdivision 7, of the Bankruptcy Act (Comp. St. § 9586), which provides in effect that the bankruptcy court has power to determine, by summary proceedings, controversies in respect to property in the actual possession of the trustee, and in respect to the extent and character of the liens thereon or rights thereunder (Collier on Bankruptcy [13th Ed.] pp. 99, 771), and that the forum selected by the trustee was the proper one.

That the bonds held by the banks were issued without legal consideration received by the bankrupt is the conclusion drawn by the trustee from his premises: (1) That a Pennsylvania corporation is without power to issue its bonds in payment of or as collateral security for a pre-existing indebtedness; and (2) that the bonds held by the banks were issued to them as collateral security for a pre-existing indebtedness. In considering whether a legal consideration was received by the bankrupt for the bonds, it will be assumed, but not decided, that the Constitution of the state of Pennsylvania (art. 16, § 7), which provides, "No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void," denies to a Pennsylvania corporation power to issue its bonds in consideration of a pre-existing indebtedness and that the trustee's major premise is sound. But what of his minor premise? Is it true that the bonds were issued to the banks as collateral security for a pre-existing indebtedness, and not for a present consideration?

The Nagle Steel Company, Inc., was organized in January, 1921, to acquire the property and business theretofore owned by Louis F. Nagle, individually, and conducted by him under the name "Nagle Steel Company." At the time the bankrupt was chartered, Nagle was indebted to the banks in rather large sums of money. This indebtedness was evidenced by notes of the unincorporated Nagle Steel Company indorsed by Nagle. He became president and dominant factor of the new corporation. He made the transfer of his property to it on April 12th following its organization, but the consideration to be paid by the corporation to Nagle therefor was not paid. Ten days after the transfer the mortgage upon the property of the company to secure the issue of bonds was authorized. On May 2d it was executed and delivered to the trustee therein named, Security Trust Company, of Pottstown, Pa., one of the appellants herein. The bonds secured by the mortgage were immediately ordered but, by reason of a printers' strike, they were not delivered by the printer until October.

Thereupon the bonds, whose validity is here questioned, were delivered to the banks as collateral security for notes of the cor-

poration, which had theretofore been discounted by the banks. The proceeds of these notes were used by the corporation to retire the maturing notes of the unincorporated company, and were credited by the corporation as payments made to Nagle on account of the unpaid purchase price for the property acquired from him. The charge of want of legal consideration made by the trustee does not embrace the notes thus made by the corporation, but is directed only to the bonds issued and delivered by the corporation to the banks after the notes had been discounted. The notes of the unincorporated Nagle Steel Company, indorsed by Nagle, held by the Rahway Bank at the time the corporation was chartered, were not renewed. Upon their maturity, soon after such organization, they were replaced by notes of the corporation, the proceeds of which were used to pay the maturing notes of Nagle. Yet thereafter, still early in 1921, the bank decided to demand payment of the notes of the corporation, and to discount no further notes for it. The corporation was so advised.

To induce the bank to continue to discount its notes the corporation, through Nagle, its president, promised to deposit with the bank bonds of the corporation as collateral security for the payment of the money obtained upon such notes. As a result of that promise the bank continued to discount the notes of the corporation. In fulfillment of that promise the bonds were delivered to the bank in October upon their receipt from the printer. In the Pottstown banks no note of the unincorporated company was replaced by a note of the corporation until June 6th. Beginning on that day each note of the unincorporated Nagle Steel Company was paid at maturity by the corporation from the proceeds of its own notes discounted by the bank, and the amount of such payments credited on account of the purchase price. As in the case of the Rahway Bank, the bonds were not delivered to the Pottstown banks until their receipt from the printer in October, and likewise, as in the case of the Rahway Bank, their delivery was then made in fulfillment of a prior promise so to do. That such promise was made to the Pottstown banks, and that it antedated the first loan made by either of those banks to the corporation, was testified to, expressly or in effect, by William M. Bunting, treasurer of the Security Trust Company, by James Morris, president of the National Bank of Pottstown, and by Nagle himself. The testimony is that such promise was made by Nagle as early as December, 1920, when he was planning to incorporate his business and was discussing the change with his bankers, and that such promise was assumed and fulfilled by the corporation.

[2] Promises so made and assumed are valid and binding. Commonwealth Steamship Co. v. American Shipbuilding Co. (D. C.) 197 F. 780, 797; Id. (C. C. A.) 215 F. 297; Irwin Glass Co. v. Buchanan (C. C. A.) 289 F. 348, 350. We think the oral testimony to the effect that the promise was so made is strongly corroborated by the fact that the mortgage was issued and delivered to the trustee before the first loan was made to the corporation, and that loans continued to be made to the corporation, notwithstanding the fact that the Security Trust Company at least knew that a $500,000 mortgage was outstanding against the property of the corporation. It is further corroborated by the fact that the bonds were ordered before the first loan was made to the corporation, that the bonds were not otherwise disposed of by the corporation, and that, immediately upon their receipt by the corporation, delivery thereof was made to the banks.

The court below, however, was of the opinion that the existence of a prior promise was negatived by the letters written by the Security Trust Company to Nagle on May 31st and July 19th, in which that bank asked for collateral for loans made to "Nagle Steel Company," but on May 31st no loans had been made to the corporation by that bank. Obviously, therefore, the "Nagle Steel Company," whose notes were there referred to, was not the corporation but was the unincorporated company. We think the letter of July 19th had reference to the same unincorporated company, some of whose notes had not then been replaced by notes of the corporation. Nor must the fact be overlooked that it was immediately after the letter of May 31st that Nagle's notes began, upon their maturity, to be replaced by the notes of the corporation.

[3] The law, as we understand it, is that, where a borrowing corporation promises the lender, before the loan is made, that it will subsequently issue and deliver its bonds as collateral security for the loan, and later fulfills its promise, the subsequent issuance and delivery of the bonds relates back to the time of the promise, and that bonds so issued are, in legal contemplation, issued for a present consideration, for money "actual-

ly received," and not for an antecedent debt. Westinghouse Electric & Mfg. Co. v. Brooklyn R. T. Co. (D. C.) 288 F. 221. We think that the bonds delivered by the corporation to each of the three banks were so delivered in conformity with these principles, and that, consequently, the contention of the trustee that the bonds held by the banks were issued for a pre-existing indebtedness, not for "money or property actually received," has not. been sustained.

The decrees below must be reversed, with costs, and with directions to the court below to dismiss the petitions, with costs.