## In re PAUL DELANEY CO., Inc.

District Court, W. D. New York. October 18, 1927.

**1. Corporations** �köö474—**Bonds of corporation, invalid under state law, because issued and pledged for pre-existing debt, held not validated by transaction which left them in hands of pledgee as security for essentially same debt (Stock Corporation Law N. Y. § 69).**

Bonds of bankrupt corporation, issued and pledged for a pre-existing debt, and which were therefore invalid under Stock Corporation Law N. Y. § 69, *held* not validated by a manipulation as a result of which they came back into the hands of the pledgee and were held as security for essentially the same debt.

**2. Corporations** �köö471—**Extension of time for payment of antecedent debt not "valid consideration" for issue of bonds under New York statute (Stock Corporation Law N. Y. § 69).**

Extension of time for payment of antecedent debt is not a "valid consideration" for issuance of bonds by a corporation, under Stock Corporation Law N. Y. § 69, providing that they may be issued only "for money, labor done or property actually received."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Valid Consideration.]

23 F.(2d)—47

**3. Corporations** �köö471—**Bonds, invalid under state law, because not issued for a present consideration, but as security for an antecedent debt, held not validated by a novation of the debt (Stock Corporation Law N. Y. § 69).**

Bonds of a corporation were invalid in the hands of a pledgee under Stock Corporation Law N. Y. § 69, because issued and pledged as security for an antecedent debt, and not for a present consideration. A part of the pledgee's debt, to the amount of $100,000, was based on a loan made on securities furnished to the corporation by one of its directors, for which it had given its note. Another company, of which the director was president, lent the corporation $100,000, which was paid to the pledgee for the release of such securities, and also $150,000 of the bonds, which were transferred to the lender. *Held*, that they were not valid in its hands as security for the $100,000 loan, which the corporation now owed to it, instead of to its president, the corporation not having received any new consideration through the novation.

**4. Corporations** �köö474—**Corporate bonds pledged for advances, present and future, actually made, held valid (Stock Corporation Law N. Y. § 69).**

Bonds of a corporation, pledged for present and future advances, which were made, *held* valid, under Stock Corporation Law N. Y. § 69.

**5. Corporations** �köö471—**Statute held not to require that consideration for issue of bonds shall be their exact par value (Stock Corporation Law N. Y. § 69).**

Stock Corporation Law N. Y. § 69, providing that a corporation shall issue bonds only for a present consideration, does not require that the consideration shall be for their exact par value.

In Bankruptcy. In the matter of the Paul Delaney Company, Inc., bankrupt. On review of orders of referee. Affirmed.

Charles F. Blair, of Buffalo, N. Y., for trustee.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (George F. Phillips, of Buffalo, N. Y., of counsel), for Marine Trust Co.

Wilcox & Van Allen, of Buffalo, N. Y. (Myer H. Gladstone, of Chicago, Ill., and John W. Van Allen and W. B. Van Allen, both of Buffalo, N. Y., of counsel), for George C. Renneker Co.

Arthur S. Tennant, of Westfield, N. Y., for State Bank of Brocton.

Haight, Smith, Griffin & Deming, of New York City (Clarence Bishop Smith and Edgar R. Kraetzer, both of New York City, of counsel), for Anchor Cap & Closure Corporation and Capstan Glass Co.

HAZEL, District Judge. The Marine Trust Company and the George C. Renneker Company have petitioned for review and revision of the decision of Referee Snow in

bankruptcy, disallowing their claims as holders of corporate bonds of the Paul Delaney Company, Inc., bankrupt, amounting to $150,000 and $130,000, par value, respectively. The involuntary petition in bankruptcy was filed March 14, and adjudication, after hearing on answer of the bankrupt, was on December 15, 1924.

The properties described in the trust mortgage, of which the Marine Trust Company was trustee, dated September 1, 1921, to secure a $750,000 bond issue upon properties of the bankrupt, were sold in the bankruptcy court free and clear of liens, and the proceeds of sale, under order of the court, held for distribution to bondholders in accordance with their proven claims. After payment of liens there will be no surplus for distribution to unsecured creditors. By the decision of the referee, various bondholders proved their liens and were held entitled to share in the fund to the extent of the par value of their bonds, as follows: Anchor Cap & Closure Corporation and Capstan Glass Company, joint holders of $75,000, par value, of bonds; Dunkirk Trust Company, holder of $50,000, par value, of bonds; State Bank of Brocton, holder of $40,000, par value, of bonds; Charles Boldt Glass Company, holder of $50,000, par value, of bonds; Midland Bank of Cleveland, holder of $60,000, par value, of bonds; and Marine Trust Company of Buffalo, holder of $40,000, par value, of bonds. The Marine Trust Company, which holds additional bonds to the amount of $150,000, par value, and Renneker Company (for short), holder of $130,000, par value, of bonds, were held not entitled to share in the proceeds of sale; their mortgage bonds having been illegally issued and pledged.

The claimant Midland Bank of Cleveland, which had also filed a petition for review, withdrew the same at the hearing, and, together with the State Bank of Brocton, Anchor Cap & Closure Corporation, et al., joined with the trustee, asking that the report of the referee be confirmed; while the Marine Trust Company and the Renneker Company opposed confirmation on the grounds that they likewise have valid mortgage bonds and were entitled to share in the net proceeds of the sale, and the latter also asserts that the allowed liens, in the main, should either be disallowed or modified as to amounts due thereon. The invalidity of the disallowed bonds is contended by the trustee in bankruptcy on the ground that the statutory consideration required by section 69 of the Stock Corporation Law of this state was not received by the bankrupt at the time the bonds were pledged, they in fact having been issued and pledged to secure a pre-existing indebtedness.

[1] As to the Marine Trust Company, it appears that on September 15, 1921, corporate bonds, of the par value of $300,000 out of a total authorized issue, on July 25, 1921, of $750,000, were pledged to it as collateral security for loans that had been made the bankrupt in 1920, totaling $267,000; that subsequently pledged bonds of the bankrupt, amounting to $150,000, were taken up and released to the Union Trust Company of Chicago for the benefit of the Renneker Company, and the prior indebtedness to the Marine Trust Company by that amount reduced. We are here concerned with the balance of the bonds, par value $150,000, remaining in its possession, which are claimed to be valid liens for advances made after the original pledge and in the manner hereinafter stated.

Section 69 of the Stock Corporation Law of this state, which applies to the instant controversy, provides that: "No corporation shall issue either shares of stock or bonds, except for money, labor done or property actually received for the use and lawful purposes of such corporation." Although it is practically conceded by claimant that the original pledge of bonds was not for a present consideration or loan, yet it is urged that subsequent loans, under an agreement to extend time of payments and providing for future loans, operated to validate the original pledge, and constituted a full compliance with the statute as to the disallowed bonds; also that the specified bonds were valid, owing to their assignment, in March, 1923, in the form of temporary bond No. 21, to the Chase National Bank as collateral security for a promissory note on a loan of $100,000 to the bankrupt, and later retransferred to claimant.

As to this transfer and loan, the conceded evidence is that the advance to the bankrupt was made at the request of claimant, which in writing guaranteed its repayment, assigned the temporary bond as collateral security, and, upon receiving the money from the Chase National Bank, credited the bankrupt on its books for that amount. Claimant also agreed that it would repurchase the assigned temporary bond in the event of bankrupt's default in payment of its note. There was default; claimant paid the note, received back the same bond which it had transferred, and retains it as collateral security for two promissory notes of the bankrupt of $50,000 each, representing the payment to the Chase

National Bank, and which is now asserted to have been a new loan granted by claimant on a new and adequate consideration. I do not agree with this contention. This transaction was evidently consummated for the convenience of claimant, and cannot be considered as an alteration or material modification of the existing relation of debtor and creditor between it and the bankrupt. The old debt could not be paid or secured with the same bonds in this manner. They were not validated as a pledge by circuity of handling or manipulation. The Chase National Bank, as a bona fide holder, no doubt, acquired temporary title as collateral security; but their repurchase did not constitute claimant a holder in due course for a valuable consideration, or confer the same equitable rights that the Chase National Bank had. Indeed, the bonds were subject to the same attack that applied before the transaction, since they were repurchased with knowledge of their taint or of their original status. See Hatch v. Johnson (C. C.) 79 F. 828; Davis v. Seneca Falls Mfg. Co. (D. C.) 8 F.(2d) 546, affirmed (C. C. A.) 17 F.(2d) 546. That the bankrupt gave a new note for the loan used to pay the Chase Bank was not, in the light of the circumstances, adequate, or a new consideration for money or property received by the corporation. It was still a pledge for the old debt, in substance.

[2] Careful consideration has been given to counsel's argument on this point, but, as no controlling authority in its support is cited, I must hold that such a transaction is not to be treated "as though there had been no original negotiation of the bonds," or that they came back rid of the original taint. Nor does the extension agreement, dated September 17, 1921, pledging the bonds for past and future loans, confer validity, since the consideration was based on bonds that were ultra vires and void. Extension of the time of payment of a pre-existing indebtedness, as said in the Progressive Wallpaper Case (C. C. A.) 229 F. at page 496 (L. R. A. 1916E, 563), "does not satisfy the requirement of the statute, * * * because the corporation does not receive in return money, labor, or property within the meaning of the statute."

The rule, then announced, that the pledge of corporation bonds as collateral security for an overdue debt, or for an extension of time for its payment, or the substitution of other security, is not a lawful issue, is criticized on the strength of the intimation of Judge Lacombe, who said, as master of chancery in Westinghouse Elec. Co. v. Brooklyn

R. T. Co. (D. C.) 288 F. 228, which tested the validity of bonds of a public service corporation, that he thought bonds of a corporation could be pledged for an antecedent debt, but he nevertheless felt bound to follow the prior decision of the Circuit Court of Appeals. The case was affirmed on appeal; the court ruling that the proofs showed that the bonds were pledged contemporaneously with the loans and on the surety of the collateral, and, moreover, that the money was actually received by the corporation and bonds pledged as an original transaction; whilst in the Progressive Wallpaper Case the indorser of the first note was released, a renewal note taken, and corporate bonds pledged in lieu of the indorsement, which, the appellate court remarked, plainly showed a collateral pledge to secure payment of an antecedent debt.

In the Davis Case, supra, decided by me, I substantially repeated what Judge Rogers said in the Progressive Wallpaper Case, viz.: That an extension of time of payment was not a compliance with the statute, and it was there said that the issuance of bonds by a corporation was prohibited, except for money, labor done, or property actually received for its use and lawful purpose; the corporation having no lawful right to pledge its stock for a pre-existing loan, not induced by a promise to deliver them as security. The case was affirmed by the Circuit Court of Appeals, but the precise point urged here, viz. that an agreement to extend the time of payment of an old debt constitutes a valuable consideration, and is equivalent to the corporation receiving property, was not directly passed upon.

The extension of time of payment of old loans as a new consideration for pledging bonds as collateral security, however, was pressed in the Progressive Wallpaper Case, and, after considering the adjudications of this state and of other states having a similar statute, it was ruled that an extension of time for paying an overdue debt was not a valuable consideration for the issuance of corporate bonds. The statute in terms forbids it. And, unless the pledge is contemporaneous with the loan, or was induced by a promise to pledge the corporate bonds as security, or a condition arises like that appearing in First Savings & Trust Co. v. Waukesha Canning Co. (C. C. A.) 211 F. 927, and Mudge v. Black, Sheridan & Wilson (C. C. A.) 224 F. 919, the pledge is invalid. See, also, Lyon v. Bleeg (C. C. A.) 240 F. 405; Kemmerer v. St. Louis Blast Furnace Co. (C. C. A.) 212 F. 63; Central

Trust Co. v. Southern Oil Corp. (C. C. A.) 8 F.(2d) 338. None of the named conditions, qualifying the rule of invalidity, is suggested as being present in this case, and hence the referee rightly held that claimant's original bonds to secure the balance of the antecedent indebtedness were unlawfully pledged under the statute, and, moreover, he was right in holding that the subsequent loan to the bankrupt of $100,000, in payment of the note to the Chase Bank, and repossession of said bonds by claimant, did not constitute a new or valuable consideration for their issuance or repledge.

[3] As to the Renneker Company bonds, par value $130,000, the referee found that on January 26, 1922, the then indebtedness of the Marine Trust Company against the Delaney Company, the bankrupt, was reduced from $300,000 to $150,000 by reason of the payment of $100,000 made by the Renneker Company, to whom bonds of the corresponding amount were released, for its benefit, to the Union Trust Company of Chicago, and by the additional payment of $50,000 made by the Paul Delaney Company, Inc.

A summary of the facts, in so far as relevant, shows that Mr. Renneker, at all the times herein mentioned, was a director of the Delaney Company, and was also president of the Renneker Company. In the autumn of 1920, he advanced to the Delaney Company securities of the estimated value of $150,000, which were pledged to the Marine Trust Company as security for lines of credit. The loan was on condition that the Delaney Company would give its promissory note to Renneker, individually, and also, at his election, would execute to him a trust deed or mortgage on its real estate. Though the mortgage, in accordance with the arrangement with the directors, was executed and delivered as collateral security for repayment of said note, it was subsequently canceled without its having been recorded. The trust mortgage for $750,000, on the bond issue, had not at this time been executed. Thereafter, on May 25, 1921, the Delaney Company, by resolution of the directors, acknowledged that it had obtained credit to the amount of $100,000 at the Bank of Buffalo (since consolidated with the Marine Trust Company), owing in part to the individual guaranty of Renneker and the pledge of securities loaned by him to the Delaney Company, as collateral to its indebtedness, and it executed a promissory note for $100,000 to Mr. Renneker, and directed a bond issue and pledge to him in the amount of $150,000 as collateral security. No bonds, however, were issued to him. In

fact, the bond issue was not authorized until September 1, 1921, and the pledge to the Marine Trust Company for $300,000 par value was on September 15th following.

Subsequently, in January, 1922, to obtain the release of the Renneker securities, the Renneker Company borrowed $100,000 from the Union Trust Company of Chicago, which amount was paid to the Marine Trust Company by draft and applied to reduce the Delaney Company debt, together with $50,000 in money paid by the Delaney Company, leaving a balance of $150,000 still owing. Bonds of the par value of $150,000, under the arrangement, were then released to the Renneker Company, together with the Renneker securities. The Delaney Company gave Renneker, individually, its note for $100,000, the amount borrowed from the Union Trust Company of Chicago to take up the securities and bonds. It thus appears that Renneker became an unsecured creditor of the Delaney Company in October, 1920, about a year before the bonds were issued, to the extent of $150,000, by reason of the individual securities pledged to the Marine Trust Company, but that by the Renneker Company transaction, the latter having the bonds released to it, became a secured creditor; and the question now is whether the bonds, which as an original issue and pledge to the Marine Trust Company were for a pre-existing indebtedness, could be transferred to the Renneker Company, on payment of the $100,000, in consideration of the release of the Renneker securities and release of the bonds, and constitute a valid consideration for moneys and property advanced to the Delaney Company within the terms of the statute.

The trustee contends that they are illegal, and that the transfer was not in good faith or of benefit to the Delaney Company, except as to bonds of the par value of $20,000, which were a part of the $150,000 issue, and loaned by Renneker to the bankrupt to enable giving security on a loan from the Midland Bank of Cleveland. The argument is that there was no change in substance of the original debt to Renneker, an old debt, and that the bonds were not in fact issued to the Renneker Company for money, labor done, or property actually received.

"The purpose of the statute [section 69] is the protection of the stockholders and the creditors against an indebtedness created by the issuance of bonds for which the corporation *does not at the time* receive either money, labor, or property. The bank must be assumed to know that the law of the state ex-

pressly forbade the corporation from issuing bonds, unless for money, labor, or property *actually* received. It also knew that it was receiving the bonds without giving the corporation either money, labor, or property. It took the bonds with notice of this infirmity in its title, and is not therefore a bona fide holder." (Italics mine.) Progressive Wallpaper Case, supra.

There is persuasive analogy between the facts here and in the case just cited. In that case the creditor paid money to the corporation to create a new debt, by immediately paying back the money to satisfy an old debt, and then gave bonds as collateral security. Accordingly, the referee, in my opinion, was right in disallowing the Renneker Company claim, on the ground that the bonds thus acquired from the Marine Trust Company were not duly and lawfully issued to secure the past debt of Renneker or the Renneker Company.

Consideration has been given to counsel's argument that, even though it be assumed that the original pledge was unlawful, their transfer to another, for cash paid on the old debt, created a new debt by novation; but, as pointed out in the Progressive Wallpaper Case, such a plan of novation does not satisfy the Stock Corporation Law of this state. True enough, the Renneker Company was not required to make inquiries as to what the Delaney Company did with the moneys thus obtained; but there is no evidence that the bonds were directly released to it, or that it received new or valuable consideration, since the manifest purpose of the transfer was for the benefit of Renneker by securing his old debt.

As to the other allowance of claims, it is asserted by the Renneker Company that, for the most part, they were pledged for antecedent indebtednesses, or for inadequate consideration, and were substantially in the same class with it; but, as shown presently, the evidence does not substantiate this view.

[4] The Anchor Cap & Closure Corporation and Capstan Glass Company were joint holders of bonds, issued July 13, 1922, of the par value of $75,000. It was agreed that temporary bond No. 4, for $50,000, then held as collateral security by the National City Bank of New York, should be transferred to claimants in consideration of an advance of $15,000 cash, which the Delaney Company used to partly pay its existing indebtedness to the bank, and that the bonds should be retained by claimants for an existing indebtedness of $25,000 on a merchandise purchase and as security for prospective purchases. The bonds were surrendered by the bank to the Delaney Company, and then pledged to claimants, who were not aware that they had previously been pledged to the bank as security for a pre-existing debt.

After the transfer, other advances were made by claimants to pay an indebtedness of the Delaney Company to the Dunkirk Trust Company. Upon paying the note of the Dunkirk Trust Company, it delivered to the Anchor Cap & Closure Corporation a pledge bond for $25,000, part of a total pledge of $75,000, held as collateral security. In these circumstances, I think the bonds transferred to claimants were legally issued for money and property advanced to the corporation, even though the entire value was not given at the time, but was in fact given. It was so held in the Waterloo Organ Case (C. C. A.) 134 F. 345, which was an affirmance of the decision of this court (118 F. 904); and the Progressive Wallpaper Case makes clear that a pledge of bonds, as in the instant case, for present and future advances, under an agreement between the pledger and pledgee to properly account for them, was a valid pledge under the statute. See, also, In re Sharon-Warren Iron & Metal Co. (D. C.) 7 F.(2d) 474.

[5] The Dunkirk Trust Company claim arises out of a pledge of bonds amounting to $75,000, par value, there existing a past debt of $35,000 at the time. Two new notes, of $25,000 and $50,000, respectively, were discounted when the bonds were pledged. The old debt was paid out of the proceeds: the $25,000 note also was paid; and the $50,000 note later reduced to $25,000. Part of the reduction was due to the Anchor Cap & Closure Corporation advance, which received a bond, as heretofore stated, as security, of the par value of $25,000; $50,000 in bonds still being held to secure the balance of its claim. The law does not require that corporation bonds issue for their exact par value. Waterloo Organ Co. Case, supra; Sharon-Warren v. Iron Co. supra; Westinghouse Elec. Co. v. Brooklyn R. T. Co. (D. C.) 288 F. 221. The referee was right in holding that the bonds in question conformed to the statute.

The Midland Bank of Cleveland pledge resulted from the opening of an account of $50,000 by the Delaney Company on its discounted note, the pledged bonds including $40,000 from the Delaney Company and $20,000 from bonds loaned by the Renneker Company, which had been obtained from the Marine Trust Company. The time notes were renewed until September 12, 1923, when a

demand note was given for $49,812, the amount then due. Even though part of the pledged bonds were originally given for a pre-existing debt, the pledge was not invalid, since claimant was a bona fide holder, and a valuable consideration passed.

The Charles Boldt Glass Company holds bonds of the face value of $50,000 for merchandise furnished and future purchase made, beginning in March, 1922, and amounting to $110,000, which included a merchandise consignment of $33,349.16. According to the proofs, the consignment had been wrongfully converted a short time before the adjudication, but its value was not secured by the bonds. However, the balance of merchandise unpaid, amounting to $68,934.34, exceeded the par value of the bonds, and, accordingly, the claim is fully substantiated.

The State Bank of Brocton received bonds as security amounting to $40,000 from the Delaney Company to secure a promissory note of $5,000 and an additional loan of $15,000. Prior to the pledge, the State Bank was given a bill of sale, properly filed, on a large number of jugs containing grape juice, the jugs remaining in storage at the plant of the bankrupt, under a verbal agreement to release the jugs on payment of $1.15½ per jug on sales, and an additional loan of $20,000 was made. Thereafter, on October 17th, without any additional advance of money or property, the bonds in question were pledged for the prior loans of $15,000 and $20,000, made in January, 1921. The jugs and grape juice were not expressly released, but it was shown that the pledge was intended as a substitute for the bill of sale and cancellation thereof.

There are other bonds outstanding, which were admittedly issued for cash, and no serious dispute has arisen in relation to them. The mortgaged premises were sold for $166,000, subject to taxes, other liens, and administration expenses, and the amount remaining for distribution to the legal bondholders is approximately $125,000, while the par value of the bonds illegally pledged is $280,000.

The questions arising on review, as to disallowance by the referee of bonds held by the Marine Trust Company and those held by the George G. Renneker Company, are answered in the affirmative, and as to other liens, or pledged bonds, the report is confirmed.