In re MIFFLINBURG BODY CO.

No. 10141.

District Court, M. D. Pennsylvania.

Oct. 3, 1941.

Samuel Handler and Gilbert Nurick, both of Harrisburg, Pa., for Mifflinburg Bank & Trust Co.

Harry S. Knight, of Sunbury, Pa., and Walter H. Compton, of Harrisburg, Pa., for trustee.

Miller A. Johnson, of Lewisburg, Pa., for creditors.

WATSON, District Judge.

On August 31, 1940, the Mifflinburg Bank and Trust Company (hereinafter called the "Bank") filed proof of a secured claim for the sum of $150,000 as trustee under a mortgage given by the debtor as security for an issue of bonds. The proof of claim recites that bonds of the aggregate par value of $150,000 and secured by the mortgage had been issued. On February 1, 1941, the Bank filed a proof of claim as a secured creditor of the debtor in the amount of $93,328.60 with security consisting of bonds of the debtor of the aggregate par value of $113,200. On August 31, 1940, the Bank filed two petitions, one to determine the value of the security which it holds as trustee under the mortgage, and the second to determine the value of the security which it holds as collateral for the debt owed it by the debtor. Thereafter, the petitions were referred to a Special Master for hearing and report. On June 2, 1941, the Special Master filed his report and recommended inter alia that the entire claim of the Bank be classified as unsecured. On June 9, 1941, objections were filed to this report by the Bank. The Special Master's report and the objections thereto are now before the Court for disposition.

From the record of proceedings before the Special Master and from the facts as found by him, I find the facts to be as follows: On April 1, 1938, after proper corporate procedure, a mortgage was given by the debtor to the Bank as trustee to secure a bond issue of the debtor in the sum of $150,000. Of this bond issue, bonds of the par value of $36,800 were sold for cash. On October 20, 1938, the debtor pledged with the Bank as collateral security bonds of the aggregate par value of $95,000. The debt which the bonds were to secure had been incurred several years before the pledging of the bonds, and the debtor did not receive any additional money for these bonds. On April 23, 1940, bonds of the same issue of the aggregate par value of $18,200 were pledged with the Bank as additional security for the same indebtedness. Prior to the pledging of the bonds with the Bank, the Pennsylvania Department of Banking directed the Bank to obtain additional security for the indebtedness of the debtor or to cause the indebtedness to be reduced. The transactions consisting of the pledging of the debtor's bonds with the Bank were not induced or accomplished by reason of any fraud or collusion on the part of the officers or directors of the debtor and the Bank. On June 11, 1940, a creditors' petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was filed against the debtor, and on June 24, 1940, the debtor filed an answer admitting the allegations of the petition and joining in the prayer for relief; on July 9, 1940, the creditors' petition was approved.

The Bank in its capacity as an indenture trustee under the mortgage has failed to comply with the provisions of Section 211 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 611, in that it

has failed to file a statement under oath as to any matters required by that section. This failure on the part of the Bank makes it impossible for the Court to safeguard the interests of the bondholders as is contemplated by the provisions of Sections 212 and 213 of Chapter X, 11 U.S.C.A. §§ 612, 613. Furthermore, the proof of claim filed by the Bank as trustee and the petition now before the Court which was filed by the Bank as trustee fail to set forth, or refer to, the provisions of the mortgage which authorize the Bank to appear and represent the bondholders. Under these circumstances, the petition of the Bank as trustee under the mortgage should not have been considered by the Special Master. I am of the opinion that the petition of the Bank as trustee should be dismissed without prejudice to the right of the Bank to file a similar petition after having complied with the provisions of Section 211 if the Bank finds it necessary to do so.

In the petition of the Bank as a secured creditor, the principal question presented to the Court is whether or not bonds which have been pledged as collateral security for a pre-existing debt are invalid in the hands of the pledgee because issued in violation of the provisions of Article 16, Section 7 of the Constitution of Pennsylvania, P.S. which provides that: "No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

A careful search of the Pennsylvania authorities reveals that this question has never been ruled upon by the appellate courts of Pennsylvania. This situation complicates the task of this Court inasmuch as the validity of the bonds here under consideration must be determined in accordance with Pennsylvania law.

The Pennsylvania Courts have held that a mortgage given by a corporation to secure a pre-existing debt is valid, but the constitutional provision relative to the issuance of bonds was not involved. Manhattan Hardware Co. v. Phalen, 128 Pa. 110, 18 A. 428; Ahl v. Rhoads, 84 Pa. 319. Hence, the pledging of corporate property as security for a pre-existing indebtedness is not unlawful in Pennsylvania. Also, bonds given as payment for notes of the corporation were held to be valid in Wrightsville Hardware Co. v. McElroy, 254 Pa. 422, 98 A. 1052. And in Rahway

National Bank v. Thompson, 3 Cir., 7 F.2d 419, it was decided that where bonds were given as collateral security for a pre-existing debt in accordance with an agreement to so issue them, entered into at the time the debt was incurred, the issuance related back to the agreement and the bonds were valid.

From these authorities it is clear that the bonds here under consideration are valid unless they were issued in violation of the constitutional provision above quoted.

The case of Miller v. Hellam Distilling Company, 57 Pa.Super. 183, 191, has been relied upon by both sides as supporting their respective positions as to the proper construction of the constitutional provision. The Bank has gone so far as to attempt to show that the record before the lower court in that case presented facts identical with those here under consideration. However, a careful study of the language used in the opinion of the Superior Court refutes the contention of the Bank insofar as the authority of that court is involved. The Court stated, 57 Pa.Super. at page 189, that, "Having the power to issue bonds for less than their face value, may they be pledged as collateral for money borrowed? The auditor found that the money from the notes passed to the company. The bonds were pledged as collateral pursuant to a resolution of the board of directors. There was no evidence of any trick, artifice, fraud or abuse of discretion on the part of the directors. The price at which the bonds were placed as collateral is not of itself sufficient to convict the directors of bad faith. The consideration which inured to the company for the delivery of the bonds in pledge was the money it received on its notes. *It is fairly to be assumed that without the collateral the loan would not have been granted.*" (Emphasis added.) And on page 190 of 57 Pa.Super., the Court stated, "When the bonds were so pledged and money or other property was actually received *in consequence of such use of them,* it seems to us that in a just and natural sense the bonds were issued 'for' such money or property. *They served the purpose designed by the company, procured value for it.*" (Emphasis added.) Although the Miller case unfortunately does not set forth sufficient facts to permit a clear understanding of the ruling of the case, at most the Court merely extended the doctrine of the case of Rahway National Bank v. Thompson, supra, to the situation

where there was an implied agreement to issue bonds as collateral security. The language employed by the Court and quoted in part above clearly shows that the Court did not feel that it was dealing with the problem here under consideration.

Where, as here, the money or property actually received was not received as a result of the pledging of the bonds, can it be said that the bonds were issued "for" such money or property? The weight of authority answers this question in the negative. In re Progressive Wall Paper Corp., D.C.N.Y., 229 F. 489, L.R.A.1916E, 563; In re Paul Delaney Co., Inc., D.C.N.Y., 23 F. 2d 737; Kemmerer v. St. Louis Blast Furnace Co., 8 Cir., 212 F. 63; Mudge v. Black, Sheridan & Wilson, 8 Cir., 224 F. 919; Farmers' Loan & Trust Co. v. San Diego Street Car Co., C.C.Cal., 45 F. 518; In re Dakota Plow & Wagon Co., 8 Cir., 240 F. 405; Haskell v. McClintic-Marshall Co., 9 Cir., 289 F. 405. And it is in accordance with the construction adopted by these authorities that the court in the Miller case phrased its rule that where bonds are pledged and money received "in consequence of such use of them" the bonds are valid.

The court in the Miller case also stated, 57 Pa.Super. at page 186, that "The constitutional provision was intended to prevent the jeopardizing of corporate property by an incumbrance placed upon it where no *return*, either in money or property, had been received by the corporation; * * *." (Emphasis added.) Here again the Miller case contains language consistent only with the rule established by the weight of authority because money received long prior to the pledge of bonds cannot be considered as a "return" for the bonds.

In view of the language of the Miller case and the authorities in numerous other jurisdictions, above referred to, it is my opinion that the Pennsylvania constitutional provision prohibits the pledging of bonds as collateral security for pre-existing indebtedness.

The Bank also contends that the requirements of the constitutional provision have been satisfied by reason of the fact that the debtor was granted an extension of time for the payment of its debt. The Bank offered evidence to show that the Pennsylvania Department of Banking directed the Bank to obtain additional security for the indebtedness of the debtor, and that this direction of the Department was the moving cause of the pledging of the bonds; and that, as a result of the pledging of the bonds, the Bank did not proceed to collect the money due it. The weakness of this argument arises from the fact that the Court is not here concerned with a problem governed by ordinary legal rules relative to adequate consideration, but is concerned with the construction of a constitutional provision which fixes its own measure for determining adequate consideration. The question, therefore, is not whether an extension of time for payment of a debt is adequate consideration in the ordinary sense of the term, but rather it is a question of whether or not an extension of the time for payment constitutes "money, labor done, or money or property actually received." When viewed in this light, it is clear that the contention of the Bank is without merit for obviously an extension of the time for payment of a debt is not money nor can it be considered, with due justice to the word, to be property. In re Progressive Wallpaper Corp., supra; In re Paul Delaney Co., D.C., 23 F.2d 737, supra.

### Conclusions of Law.

1. The petition of the Mifflinburg Bank and Trust Company as trustee must be dismissed.

2. The bonds of the debtor which were pledged as collateral security for a pre-existing debt were issued in violation of the provisions of Article 16, Section 7 of the Constitution of Pennsylvania.

3. For the purposes set forth in Section 197 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 597, the entire claim of the Mifflinburg Bank and Trust Company is an unsecured claim.

Now, October 3, 1941, it is ordered that:

1. The findings of fact of the Special Master be, and they are hereby, adopted insofar as they are consistent with the facts found by the Court and set forth above.

2. The petition of the Mifflinburg Bank and Trust Company as trustee for bondholders be and it is hereby dismissed.

3. For the purposes set forth in Section 197 of Chapter X of the Bankruptcy Act, the entire claim of the Mifflinburg Bank and Trust Company shall be considered as an unsecured claim.